# EXHIBIT 5

RECHTSANWALT
# DR. JOHANNES STIELDORF

A-1010 Wien, Nibelungengasse 1-3
Tel: +43-(0)1-587 62 14 / 0  Fax: DW 16
e-mail: office@stieldorf.at
Konto:
Bank Austria Creditanstalt AG
0943-46657/01 (BLZ 12000)
ADVM: R106218

_Via Hand Delivery_
Her Honor Shira A. Scheindlin USDJ
United States District Court
Southern District of New York
500 Pearl Street, Chambers, Room 1620
New York, NY   10007

24th April, 2007

Re:    Ski Train Fire in Kaprun, MDL # 1428 (SAS);
       Blaimauer / Mitsumoto et al v. Omniglow et al, 03-CV-8960 (SAS);
       Geier et al v. Omniglow et al, 03-CV-8961 (SAS) and Mitsumoto et al v.
       Robert Bosch et al 06-CV-01657 (transferred from MDFL)

Honorable Judge Scheindlin,

In view of my previous negative experiences with Mr. Fagan and his fellow attorneys, the latest declarations and allegations of Mr. Fagan give reason for me to clarify a few points although I myself am not one of the parties in the above mentioned court cases.

(1)
I lost my 18 year-old son Matthäus in the Kaprun catastrophe.
I represent my family and 20 further victim family members as attorney in the Kaprun case.
The last thing I want is that those responsible go scot-free when there is a reasonable chance of calling them to account.

(2)
I am extremely shocked at and disappointed with the verdicts delivered in the criminal proceedings in Austria.
In my opinion, both the verdict reached in the first instance and the verdict of the appellate court are flagrant judicial errors.
But, formally speaking, these decisions have to be respected.

(3)
In view of these verdicts, I must represent both myself and my family as well as my clients as best as possible as regards the civil law claims which are still open.

Appendix C - 3

RECHTSANWALT
## DR. JOHANNES STIELDORF

**(4)**
Mr. Fagan appeared on the scene shortly after the catastrophe in Austria and promised the earth. He wanted to gain "millions" (whether for each victim or for each family member  - he was not even able to ever sensibly clarify this question).

**(5)**
Over the last years and up until now, neither Mr. Fagan nor his fellow attorneys have answered basic questions regarding their efforts in the USA such as
-       what law applies,
-       when do the claims become time-barred,
-       on what grounds does the US court have jurisdiction,
-       how the various "defendants" are proved to be the proper parties with
        respect to the plaintiffs' claims, etc.

**(6)**
On the occasion of the opt-in declaration during the first class action he had already told all victim family members that the phrasing of this declaration was pre-determined by the court and could therefore not be changed. He also said that the deadline for joining could neither be changed nor extended.

**(7)**
He said the same again in August / September 2006 when he called in new declarations (retainers) in the form of an ultimatum. He, respectively Mr. Lowy, maintained that this was absolutely the last opportunity to participate in the US proceedings. Such participation would only be possible with a written power of attorney (retainer).

Judging from the way it was phrased, the objective of this retainer was obvious - to secure the representation rights for Mr. Fagan both in the USA and, above all, in Europe before the Austrian Commission and the absolute subordination to Mr. Fagan's methods and decisions.

**(8)**
With these (new) retainers, Mr. Fagan therefore tried to obtain authorisations and retainers (again) which had already expired, partly on account of the deadline set by him, or which he had actually not had from the very beginning. I had always made it clear for myself and my clients that he was only entitled to representation in the USA and that I alone would attend to the European proceedings.
The offer I had already made to Mr. Fagan in 2002(?) that we discuss and agree on final agreements so that any decision made would not interfere with the efforts of the other was completely ignored.

In September 2006, this point was again raised with Mr. Lowy with regard to Mr. Fagan's draft of a new retainer. At the same time, I pointed out numerous deficits in the amended complaint. He explained that, without this new retainer agreement, any possibilities at all of participating in the "successful" American proceedings would be finally lost for my clients and myself. Such participation would only be possible with a written retainer which would have to be submitted within a deadline of a few days.

RECHTSANWALT
## DR. JOHANNES STIELDORF

The wording of this proposed retainer would in my opinion conflict with Austrian professional rules of conduct.
Furthermore, with this new retainer agreement, it is clear that Mr. Fagan also wishes to take over the leadership in the Austrian negotiations. This is not only contrary to agreement but also unacceptable in view of his performance in Austria which can only be described as being pathetic.

However, it emerged that no deadline had been set either by the court or by law and that court action obviously did not depend on a written retainer. Mr. Fagan apparently represented a number of clients without having received a new retainer.

(9)
Against this background, special mention must be made of the fact that Mr. Fagan was not willing or not in a position to give the Austrian Commission in Vienna precise details of whom he actually represented or for whom he believed he was conducting negotiations at the Commission meetings, in spite of repeatedly being asked to do so.

(10)
Mr. Fagan makes it clear both at meetings in Vienna and in his various complaints that he does not really know the case, that he confuses persons and facts and is not in a position to interpret the status of shareholdings and participations. In spite of it having been explained to him several times, he is completely unaware of the fact that entities with mere capital interests have no or only very limited influence, so that no liability on their part can be derived there from. Nor does he understand that public law corporations can only exert direct influence to a limited extent and only on the basis of legal provisions on companies such as, for example, the GBK (glacier railway).

(11)
Although there was no success discernable in the US cases as yet, he tried to keep the family members of the European victims toeing the line with unsubstantiated jubilant reports, repeatedly suggesting the imminent breakthrough/conclusion of a substantial settlement.

This is contrary to all the information available to me according to which all European companies named by him as defendants rejected a settlement in the USA as a matter of principle.

(12)
I believe that, at proceedings before a US judge in December 2006, Mr. Fagan maintained that he still represented both myself, my family and my clients (?). This is definitely not correct.
I have also heard that, considerable time ago, quite a number of other clients had withdrawn the powers of attorney they had given him or had simply allowed time-limited powers of attorney to expire without agreeing on an extension, but they were or are still being named by him as plaintiffs in the various proceedings.

(13)

---------------------------

RECHTSANWALT
## DR. JOHANNES STIELDORF

In as far as I obtained information on which depositions Mr. Fagan was planning, I tried to determine the validity of the evidence tendered. In most cases, it ensued that this evidence was not suitable to contribute towards the decision-relevant facts of the case.

Questioning witnesses on procedural matters after the catastrophe is completely amiss if the claims have not even been sufficiently clarified on their merits (see above).

I have always accused Mr. Fagan of clearly acting against the interests of the clients here because all these useless and pointless depositions involve considerable costs and the European companies, who showed themselves to be willing to contribute towards the solution of the Austrian Commission, would of course deduct the costs incurred by the depositions from the amount reserved for the contributions.

(14)
Mr. Fagan and all the others who have made affidavits or applications to the court falsely maintain that I, for myself and/or the sub-commission, had tried to bribe Mr. Fagan with money to abandon the US complaints.

The truth is that, in the sub-commission, other companies and participants had shown willingness to make further contributions under the prerequisite that the US American proceedings, which had been completely unsuccessful to date, be stopped.

Even if I and quite a number of colleagues are of the opinion that Mr. Fagan's activities have lead to nothing but have, on the contrary, caused delays and useless/lost expenses and that he is therefore entitled to no fee or remuneration for his "efforts", the sub-commission resolved, as a general settlement for all US American attorneys (of the plaintiffs), to make an amount available as contribution to the costs should the American activities be ended.

Against this background, this was all that I set forth in the respective talks although it is my personal opinion that Mr. Fagan and the other attorneys were actually entitled to nothing for their activities in Europe which were counterproductive and only involved costs for the work of the Commission.

(15)
From the very beginning and now even more so in view of his latest activates, I have been and still am of the opinion that Mr. Fagan is only interested in being paid as large a fee as possible.

The fact that, in his bankruptcy proceedings, he quotes the sum of EUR 16,000,000 (not US Dollars 16,000,000) already offered by the Austrian Commission in Vienna as being his only (!) asset for reorganisation within the Chapter 11 proceedings clearly shows that he is of the opinion that his activities in the USA do not stand a chance of being successful.

His paltry efforts of maintaining that important evidence such as the pressure tanks had apparently been found must also be seen against this background. This

Appendix C - 6

RECHTSANWALT
## DR. JOHANNES STIELDORF

evidence is completely immaterial as regards the course of the catastrophe as the explosion of the pressure tanks was indeed a cause of the fire but did not occur until after the death of our loved ones.

(16)
As Mr. Fagan has not only repeatedly failed to observe deadlines in his bankruptcy proceedings but also in the proceedings pending here, but also not made submissions or presented documents in good time, it would seem necessary that the court exert pressure on him to coherently conduct the lawsuit.

The latest allegations and declarations are to be seen and assessed in the light of my statement.

Yours faithfully,

(Dr. Johannes Stieldorf)

RE: 4.25.07 Dr. Stieldorf Letter to the Court

09/04/2007 01:20 PM

From: Jennifer_Rosenberg@nysd.uscourts.gov
To: Kanzlei Dr. Johannes Stieldorf | Sekretariat <office@stieldorf.at>
Cc: Rooney, Paul P. <PRooney@ReedSmith.com>; faganlawintl@aim.com; JRice@nrmlaw.com
Subject: RE: 4.25.07 Dr. Stieldorf Letter to the Court
Date: Wed, 25 Apr 2007 3:05 pm
Attachments: StieldorfFagan24_04_07ENGLISH.doc (49K)

Dear Dr. Stieldorf,

The Judge has received your letter and is grateful for your input.  She
asks that I inform you that she will give it full consideration in deciding
any issues in this case.

With this email, I am forwarding your letter to all liaison counsel in the
U.S. litigation (please see attachment, below).

Sincerely,

Jennifer

Jennifer S. Rosenberg
Law Clerk to the Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007
Office: 212.805.0474

Stieldorf(See attached file: StieldorfFagan24 04 07ENGLISH.doc)

--------------------------
Appendix C - 8

74P5SKIC                       conference

U.S. DISTRICT COURT
FILED
MAY 17 2007
Original   D. OF N.Y.

DOC # 290

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - - - - - - - - - - -x

 3    IN RE:  SKI TRAIN FIRE
      IN KAPRUN, AUSTRIA                    CASE NO.
 4                                          01 MDL 1428  (SAS)
                                            06 CV. 1657  (SAS)
 5    - - - - - - - - - - - - - - - - - - - - - - - -x

 6
                                            New York, N.Y.
 7                                          April 25, 2007
                                            11:45 a.m.
 8
      Before:
 9
                      HON. SHIRA A. SCHEINDLIN,
10
                                            District Judge
11
                             APPEARANCES
12
      NAGEL, RICE & MAZIE
13         Attorneys for American Plaintiffs
      BY:  JAY J. RICE
14
      SPEISER KRAUSE
15         Attorneys for American Plaintiffs
      BY:  CHRISTINA FRY
16
      EDWARD D. FAGAN
17         Liaison Counsel to Class Plaintiffs
18    FLORIDA LAW GROUP, L.L.C.
           Attorneys for Plaintiffs
19    BY:  JAMES F. LOWY

20    HANTMAN & ASSOCIATES
           Attorneys for Plaintiffs
21    BY:  ROBERT J. HANTMAN

22    REED, SMITH, LLP
           Attorneys for Defendant
23         Bosch Rexroth Corporation
      BY:  PAUL P. ROONEY
24

25
```

74P5SKIC                        conference

1                      APPEARANCES   (Cont'd)

2    MORRISON, MAHONEY, L.L.P.
            Attorneys for Defendant Bosch Rexroth AG
3    BY:  AARTI SONI

4    BARTLETT, McDONOUGH, BASTONE & MONASHAW
            Attorneys for Defendant Omniglow
5    BY:  E. GORDON HAESLOOP

6    FULBRIGHT & JAWORSKI, L.L.P.
            Attorneys for Defendant Exxon Mobil Corporation
7    BY:  JOHN TULLY

8    LITTLETON JOYCE
            Attorneys for Defendant Siemens Corporation
9    BY:  ROBERT JOYCE

10   KIRKLAND & ELLIS, L.L.P.
            Attorneys for Defendant Siemens Corporation
11   BY:  BRANT W. BISHOP

12   MENDES & MOUNT, L.L.P.
            Attorneys for Defendant Wika
13   BY:  EILEEN T. McCABE
            STEPHEN ROBERTS

14

15   McDERMOTT, WILL & EMERY
            Attorneys for Defendant GBK
16   BY:  CHRYSSA V. VALLETTA

17

18

19

20

21

22

23

24

25

---------------------------
Appendix B - 82

74P5SKIC                          conference

```
 1              (Case called)

 2              THE COURT:  Mr. Rice, good morning.

 3              MR. RICE:  Yes.  Good morning, your Honor.

 4              THE COURT:  Ms. Fry.

 5              MS. FRY:  Good morning.

 6              THE COURT:  Mr. Fagan.

 7              MR. FAGAN:  Good morning.

 8              THE COURT:  Mr. Lowy.

 9              MR. LOWY:  Good morning.

10              THE COURT:  Good morning, Mr. Hantman.

11              MR. HANTMAN:  Good morning.

12              THE COURT:  Mr. Littleton, good morning.

13              MR. LITTLETON:  Good morning.

14              THE COURT:  Mr. Bishop.

15              MR. BISHOP:  Good morning, your Honor.

16              THE COURT:  Mr. Haesloop.

17              MR. HAESLOOP:  Good morning, your Honor.

18              THE COURT:  Mr. Rooney.

19              MR. ROONEY:  Good morning, your Honor.

20              THE COURT:  Ms. Soni.

21              MS. SONI:  Good morning, your Honor.

22              THE COURT:  You all signed the seating chart so

23   Mr. Gilmore; Mr. Joyce; Mr. Tully, is it?

24              MR. TULLY:  Good morning, your Honor; yes.

25              THE COURT:  Ms. McCabe.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

--------------------------
Appendix B - 83

4

**74P5SKIC**                    conference

1          MS. McCABE:  Good morning, your Honor.

2          THE COURT:  Mr. Roberts.

3          MR. ROBERTS:  Yes.  Good morning, your Honor.

4          THE COURT:  And Ms. Valletta.

5          MS. VALLETTA:  Good morning, your Honor.

6          THE COURT:  Well, there has been just a pile of

7    submissions pouring in right up to the last minute, almost too

8    many to list but for the record I do like to do that -- sorry

9    to say, 18 submissions that we had.  I guess that's the result

10   of the availability of e-mail, it makes it so easy for people

11   to fire off responses to one another.  But, I have reviewed

12   those 18 so I will just briefly read them into the record and

13   then we will get to the heart of it.

14          An April 9th letter from Mr. Bishop to the Court

15   regarding plaintiff's failure to timely file opposition papers

16   to defendants' motion to dismiss.  That was No. 1.

17          No. 2.  E-mail dated April 11th from Mr. Fagan to the

18   Court, regarding that opposition.

19          No. 3.  A letter dated April 11th, Mr. Rooney to the

20   Court, regarding plaintiff's late opposition.

21          No. 4.  Letter dated April 12th from Mr. Bishop to the

22   Court, regarding plaintiff's late opposition.

23          No. 5.  Letter dated April 13th from Mr. Lowy,

24   Mr. Fagan and Mr. Hantman to the Court requesting Rule 16

25   conference to discuss alleged witness tampering.

5

**74P5SKIC**                              conference

1        No. 6.  A letter dated April 16th, from Mr. Bishop to

2    the Court, responding to the letter from plaintiff's counsel

3    that I just described.

4        No 7.  A letter dated April 17th from Mr. Haesloop to

5    the Court pointing out that plaintiffs had been serving

6    response papers not only late but in a piecemeal fashion and

7    requesting an extension to file his reply on the standing

8    motion and his opposition on the sanction motion.

9        No. 8.  A letter dated April 17th from Ms. Valletta to

10   the Court responding to plaintiff's allegations of witness

11   tampering.

12       No. 9.  A letter dated April 17th from Mr. Hantman to

13   the Court responding to Mr. Bishop's April 16th letter and

14   further requesting a Rule 16 conference, again to discuss the

15   alleged witness tampering.

16       No. 10.  A letter dated April 18th from Mr. Haesloop

17   to the Court trying to clarify the briefing schedule on a

18   number of pending motions.

19       No. 11.  A letter dated April 20th from Mr. Bishop to

20   the Court.

21       And I am going to pause at this point for a minute,

22   explaining why Siemens is not filing at this time a motion to

23   dismiss itself as a defendant in the newly transferred

24   Mitsumoto case because it says in that letter that you agreed

25   to dismiss Mr. Fagan but you haven't filed the papers.

6

74P5SKIC                    conference

1          Is it accurate that you agree to dismiss Siemens from

2    that case? He has got written proof of it.

3          MR. FAGAN:  It is, your Honor.

4          THE COURT:  Why haven't you filed the dismissal so

5    that he is confident that it is done?

6          MR. FAGAN:  Your Honor --

7          THE COURT:  Just on this one I paused from the reading

8    of all the letters just to make sure it is done.

9          MR. FAGAN:  Your Honor, I have no problem with that.

10   Mr. Lowy was the counsel in Florida, he was supposed to execute

11   it and we will do it.  We will do it right now, Judge.

12         MR. BISHOP:  I have a copy, your Honor.  I can pass it

13   to them to sign.

14         THE COURT:  Why don't we do that.  I will pause, you

15   sign, and we will file and then you have that confidence,

16   Mr. Bishop, that that's at least done.

17         MR. BISHOP:  Thank you, your Honor.

18         THE COURT:  Hand it up to my clerk and it will be

19   filed.  Thank you.

20         No.  12.  Letter dated April 23rd, from Mr. Rooney to

21   the Court, requesting Mr. Fagan be held personally responsible

22   for the costs of deposing the whistle-blowers as a sanction

23   pursuant to 28, United States Code, Section 1927.

24         No. 13.  A letter dated April 24th from Mr. Fagan to

25   the Court responding to Mr. Rooney's April 23rd letter and

74P5SKIC                         conference

1   offering an agenda for today's conference.

2        No. 14. Letter dated April 24th, from Mr. Littleton

3   to the Court, requesting that the Court rescind the

4   confidentiality orders related to the so-called whistle

5   blowers.

6        No. 15. An e-mail dated April 24th from Mr. Rooney

7   to the Court offering an agenda for today's conference.

8        No. 16. An April 25th email from Mr. Bishop to the

9   Court sort of rephrasing one of the topics. Mr. Bishop wrote

10  that he takes the position he really doesn't want an extension,

11  he really wants to say that plaintiff's late papers should be

12  entirely disregarded and surely plaintiff should not be given

13  any more time to file any additional papers. But, if the Court

14  won't disregard and he doesn't want extension, he doesn't think

15  plaintiff should get additional time.

16       No. 17. A letter dated April 24th from Mr. Rooney

17  requesting leave to move to disqualify Mr. Fagan on a number of

18  grounds.

19       No. 18. An e-mail from Mr. Fagan dated April 25th,

20  to the Court, responding to Mr. Rooney's letter.

21       I think that's the very last e-mail. Okay. That

22  describes the list of submissions that the Court is dealing

23  with here. I do have both sides' proposed motion list and I

24  added a few of my own, one of which we just took care of, the

25  Siemens dismissal; another one is the bond. Can anyone tell me

# EXHIBIT   6

**From:** Jennifer_Rosenberg@nysd.uscourts.gov

**To:** faganlawintl@aim.com

**Cc:** aliederm@morrisonmahoney.com; ASoni@morrisonmahoney.com; AvonWaldow@ReedSmith.com;
bbishop@kirkland.com; CMOERDLER@stroock.com; cvalletta@mwe.com; egordon.haesloop@bmbmlaw.com;
Eileen.McCabe@mendes.com; gregory.t.kenney@exxonmobil.com; Hantmanrj@aol.com;
jameslowy@floridalawgroup.com; JRice@NRMLAW.com; PRooney@ReedSmith.com; rgilmore@kirkland.com;
robert.littleton@littletonjoyce.com; rowen@fulbright.com; rswift@kohnswift.com; rweiner@mwe.com;
stephen@harnik.com

**Subject:** Re: ROSA DEPOSITION

**Date:** Wed, 6 Jun 2007 3:02 pm



The Judge just spoke with Mr. Rosa.

His deposition will take place tomorrow, in accordance with the schedule
arranged by Mr. Haesloop.


Jennifer S. Rosenberg
Law Clerk to the Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007
Office: 212.805.0474

EXHIBIT  7

**From:** Jennifer_Rosenberg@nysd.uscourts.gov

**To:** PRooney@ReedSmith.com; faganlawintl@aim.com; aliederm@morrisonmahoney.com; ASoni@morrisonmahoney.com; AvonWaldow@ReedSmith.com; bbishop@kirkland.com; CMOERDLER@stroock.com; cvalletta@mwe.com; egordon.haesloop@bmbmlaw.com; Eileen.McCabe@mendes.com; Hantmanrj@aol.com; jameslowy@floridalawgroup.com; JRice@NRMLAW.com; rgilmore@kirkland.com; robert.littleton@littletonjoyce.com; rswift@kohnswift.com; rweiner@mwe.com; rowen@fulbright.com; gregory.t.kenney@exxonmobil.com; stephen@harnik.com

**Subject:** In re Ski Train, MDL 1428

**Date:** Mon, 18 Jun 2007 3:17 pm

---

Hello Everyone,

Will any party with the requisite information please answer the Court's following questions:

How many foreign plaintiffs currently do not have civil actions pending in Austria? And, if plaintiffs falling in this category attempted to file suit today, would their claims be time-barred? (i.e., What is the applicable statute of limitations in Austria for analogous tort actions?).



Please respond ASAP and no later than close of business Wednesday, June 20th.

Thank you.



Jennifer S. Rosenberg
Law Clerk to the Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007
Office: 212.805.0474

From: faganlawintl@aim.com
To: Jennifer_Rosenberg@nysd.uscourts.gov; PRooney@ReedSmith.com; aliederm@morrisonmahoney.com; ASoni@morrisonmahoney.com; AvonWaldow@ReedSmith.com; bbishop@kirkland.com; CMOERDLER@stroock.com; cvalletta@mwe.com; egordon.haesloop@bmbmlaw.com; Eileen.McCabe@mendes.com; Hantmanrj@aol.com; jameslowy@floridalawgroup.com; JRice@NRMLAW.com; rgilmore@kirkland.com; robert.littleton@littletonjoyce.com; rswift@kohnswift.com; rweiner@mwe.com; rowen@fulbright.com; gregory.t.kenney@exxonmobil.com; stephen@harnik.com
Subject: Re: In re Ski Train, MDL 1428
Date: Mon, 18 Jun 2007 3:46 pm

Dear Ms. Rosenberg:

I have your email and can advise that the only claims that have been filed in Austria by foreign plaintiffs are against GBK - which is presently not a party in the US cases, despite the recently filed Rule 60 (b) Motion.

I will ask the question of the Austrian Cooperating Lawyers and provide a detailed response defendant by defendant named in each of the existing complaints. 

Ed Fagan

-----Original Message-----
From: Jennifer_Rosenberg@nysd.uscourts.gov
To: PRooney@ReedSmith.com; faganlawintl@aim.com; aliederm@morrisonmahoney.com; ASoni@morrisonmahoney.com; AvonWaldow@ReedSmith.com; bbishop@kirkland.com; CMOERDLER@stroock.com; cvalletta@mwe.com; egordon.haesloop@bmbmlaw.com; Eileen.McCabe@mendes.com; Hantmanrj@aol.com; jameslowy@floridalawgroup.com; JRice@NRMLAW.com; rgilmore@kirkland.com; robert.littleton@littletonjoyce.com; rswift@kohnswift.com; rweiner@mwe.com; rowen@fulbright.com; gregory.t.kenney@exxonmobil.com; stephen@harnik.com
Sent: Mon, 18 Jun 2007 3:17 pm
Subject: In re Ski Train, MDL 1428

Hello Everyone,

Will any party with the requisite information please answer the Court's following questions:

How many foreign plaintiffs currently do not have civil actions pending in Austria?  And, if plaintiffs falling in this category attempted to file suit today, would their claims be time-barred?  (i.e., What is the applicable statute of limitations in Austria for analogous tort actions?).

Please respond ASAP and no later than close of business Wednesday, June 20th.

Thank you.


Jennifer S. Rosenberg
Law Clerk to the Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007
Office: 212.805.0474


Check Out the new free AIM(R) Mail -- 2 GB of storage and industry-leading spam and email virus protection.

------------------------

# EDWARD D. FAGAN ESQ.
### *Law Offices*
#### Five Penn Plaza, 23rd Floor, New York, NY  10001
#### Tel. (646) 378-2225, Fax (646) 417-5558 & Email: faganlawintl@aim.com

*Via Fax Delivery*                                            Tuesday 19 June 2007
Honorable Shira A. Scheindlin USDJ
United States District Court - Southern District of New York
500 Pearl Street - Chambers - Room 1620
New York, NY  10007

Re:    *In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS);*
       *Blaimauer et al v. Omniglow et al, 03-CV-8960 (SAS); Geier et al v. Omniglow et al, 03-*
       *CV-8961 (SAS); Mitsumoto et al v. Republic of Austria et al 06-CV-2811 (SAS) and*
       *Mitsumoto et al v. Robert Bosch Corp et al 07-CV-935 (SAS)*

Honorable Judge:

Together with my colleagues James F. Lowy Esq. and Robert Hantman Esq, I represent the
*Blaimauer/Mitsumoto, Geier* and *Mitsumoto* Plaintiffs in the above matters.

I am advised by my co-counsel that the Court has issued an Opinion and Order despite the fact
the Court requested and set a deadline for TOMORROW at 5 pm by which to provide additional
information related to the Defendants Motion to Dismiss for alleged *Forum Non Conveniens*.  I
have not had an opportunity to access emails or to read or review the Opinion and Order which
my co-counsel have advised me was apparently issued by Court' on June 19, 2007. Based on
what has been related to me, the June 19, 2007 Opinion and Order contained certain factual and
legal errors.

The Court should note that I am surprised that any Opinion and order would have been issued
prior to June 20/21, 2007, which was the earliest possible date based upon Your Honor's Clerk
Ms. Rosenberg's June 18, 2007 email..  On June 18, 2007, Ms. Rosenberg on behalf of the
Court requested clarification as to certain threshold issues.

In response to this request by the Court per Ms. Rosenberg, I contacted Austrian and Japanese
counsel, requested and am receiving Declarations that show that Austrian is NOT an adequate
alternate *forum* for Plaintiffs' claims and that in fact most if not all of the claims are either
*"Dead on Arrival"* or any resolution in Austrian could not be enforceable as against the moving
Defendants – all of which are US Companies in US Courts.  These Declarations would have
been and are being provided within the time prescribed by the Court and I respectfully submit
that any opinion and Order issued before the June 20, 2007 deadline imposed by Court for the
additional information is, respectfully, improvidently issued.

I respectfully submit that the Court's Opinion and Order of June 19, 2007 was issued premature
and was issued without waiting for the responses to the Court's June 18, 2007 requests for
information which would have shown the factual and legal basis for denying Defendants' Motion
based upon allegations that Austria is an adequate alternate forum which the facts and law,
including the responses to the Court's June 18, 2007 questions, show it is not.

# EDWARD D. FAGAN ESQ.
## *Law Offices*

*Hon. Shira A. Scheindlin USDJ – 6/19//07 Letter to Judge Scheindlin – Page 2*
*Re:     In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS);*
*Blaimauer et al v. Omniglow et al, 03-CV-8960 (SAS); Geier et al v. Omniglow et al, 03-*
*CV-8961 (SAS); Mitsumoto et al v Republic of Austria et al, 06-CV-2811 (SAS) and*
*Mitsumoto et al v. Robert Bosch Corp et al 07-CV-935 (SAS)*

-------------

I will submit the Declarations as per the Court's June 18, 2007 request, which come from knowledgeable Austrian counsel and which are in response to the Court's request by the Court imposed deadline as set forth in Your Honor's Clerk, Ms. Rosenberg's email from June 18, 2007, by June 20, 20007 by the close of business US time.

In view of the foregoing, I respectfully urge the Court NOT to formally enter any decision until such time as the Court has considered the Declarations in response to the questions requested by Your Honor's Clerk, Ms Rosenberg as per her email of yesterday, and within the time set by the Court as the close of business TOMORROW – June 20, 2007.

As always, thank you for the Court's continued attention and time in these cases.

Respectfully submitted,
/s/ *Edward D. Fagan*
Edward D. Fagan
EDF/

Ccs:    All Counsel of Record in the All Cases - electronically

# EDWARD D. FAGAN ESQ.
## Law Offices
### Five Penn Plaza, 23rd Floor, New York, NY   10001
### Tel. (646) 378-2225, Fax (646) 417-5558 & Email: faganlawintl@aim.com

*Via Fax Delivery*                                    Wednesday 20 June 2007
Honorable Shira A. Scheindlin USDJ
United States District Court - Southern District of New York
500 Pearl Street - Chambers - Room 1620
New York, NY   10007

Re:    *In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS);*
       *Blaimauer et al v. Omniglow et al, 03-CV-8960 (SAS); Geier et al v. Omniglow et al, 03-*
       *CV-8961 (SAS); Mitsumoto et al v. Republic of Austria et al 06-CV-2811 (SAS) and*
       *Mitsumoto et al v. Robert Bosch Corp et al 07-CV-935 (SAS)*

Honorable Judge:

Together with my colleagues Robert Hantman and James Lowy, I represent the *Blaimauer/*
*Mitsumoto, Geier and Mitsumoto* Plaintiffs in the above matters.

As a follow up to my letter from last night, and by 5 pm today (the time set by the Court as
conveyed to the parties by Your Honor's Clerk Ms. Rosenberg) I will submit the responses to the
Court's questions from Monday June 18, 2007 related to the adequacy of Austria as an alternate
forum, and specifically describing any bars to Plaintiffs re-filing of the actions in Austria.

I have already been advised by Austrian & Japanese Counsel (including Dr. Ivo Greiter, Dr.
Herwig Hasslacher, Dr. Toichiro Kigawa and Dr. Ulrich Schwab) that there are multiple bars,
including jurisdiction and/or time bars, to these claims being re-filed in Austria.

Declarations from these Austrian & Japanese counsel in response to the Court's questions will
show that any finding that Defendants met their burden on the Motion to disturb Plaintiffs choice
of forum and failed to demonstrate that Austria is an adequate alternate forum for Plaintiffs
claims is/was based on (i) an error of law, or (ii) clearly erroneous finding of fact, or is not
located within the range of permissible decisions, or (iii) fails to consider all the relevant factors
or unreasonably balances those factors in determining the deference to plaintiffs choice of forum
of the analysis of the adequacy of Austria as an alternate forum.   Any such finding requires
reconsideration and reversal.   See *Norex Petroleum Ltd. v. Access Industries, 416 F.3d 146 (2nd*
*Cir. 2005)* and *Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003).*

In view of the foregoing, I again urge the Court to refrain formally entering any decision without
considering the specific additional information requested on June 18, 2007 and which shows that
Austria is not an adequate alternate forum for these claims and as such Defendants' Motions to
Dismiss based on *forum non conveniens* should have been and should be denied.

Respectfully submitted,

/s/ electronically signed
Edward D. Fagan

Ccs:    All Counsel of Record in the All Cases - electronically

--------------------------
Appendix C - 14

# EDWARD D. FAGAN ESQ.

*Law Offices*

Five Penn Plaza, 23rd Floor, New York, NY   10001

Tel. (646) 378-2225, Fax (646) 417-5558 & Email: faganlawintl@aim.com

<u>*Via Fax (212) 805-7920*</u>                            Wednesday 20 June 2007
Honorable Shira A. Scheindlin USDJ
United States District Court - Southern District of New York
500 Pearl Street - Chambers - Room 1620
New York, NY   10007

Re:     *In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS);*
         *Blaimauer et al v. Omniglow et al, 03-CV-8960 (SAS); Geier et al v. Omniglow et al, 03-*
         *CV-8961 (SAS); Mitsumoto et al v. Republic of Austria et al 06-CV-2811 (SAS) and*
         <u>*Mitsumoto et al v. Robert Bosch Corp et al 07-CV-935 (SAS)*</u>

Honorable Judge:

Pursuant to Ms. Rosenberg; June 18, 2007 email, enclosed please find the June 20, 2007
Declaration of Dr. Ivo Greiter ("Greiter Declaration") responsive to questions raised by the Court
in its email of Monday afternoon June 18, 2007 where the Court raised the issues of potential
bars to re-filing of claims in Austria.

The Greiter Declaration is submitted by the 5 pm time as prescribed by the Court on Monday
June 18, 2007.  The Court should note that Dr. Greiter requested that I advise the Court that in
his par. 4 b) iii) there is a typo which should ready Bosch Rexroth Corporation that has been a
defendant in the US since 2001 and as to which the same opinions and conclusions apply.

I do realize that there was a decision issued yesterday on Pacer indicating that the Court would
not consider further submissions.  However, I believe that this submission is consistent with the
Court prior request.

If I am incorrect I apologize for any inconvenience to the Court but believe this submission is
proper and should be included for completeness of the record.

Respectfully submitted,


/s/ electronically signed
Edward D. Fagan


Attached 5 Page Declaration of Dr. Ivo Greiter


Ccs:    All Counsel of Record in the All Cases - electronically

-----------------------------

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| X | |
| IN RE: SKI TRAIN FIRE IN KAPRUN AUSTRIA ON NOVEMBER 11, 2000 | MDL # 1428 (SAS) |
| X | |
| This document relates to the following cases: | |
| X | |
| BLAIMAUER, et al, Plaintiffs, | |
| - and - | Civil Action # 03-CV-8960 (SAS) |
| OMNIGLOW CORPORATION, et al Defendants. | |
| X | |
| X | |
| GEIER, et al, Plaintiffs, | Civil Action # 03-CV-8961 (SAS) |
| - and - | |
| OMNIGLOW CORPORATION, et al Defendants. | |
| X | |
| X | |
| MITSUMOTO, et al, Plaintiffs, | Civil Action # 06-CV-2811 (SAS) |
| - and - | |
| REPUBLIC OF AUSTRIA, et al Defendants. | |
| X | |
| X | |
| MITSUMOTO, et al, Plaintiffs, | Civil Action # 07-CV-935 (SAS) |
| - and - | |
| ROBERT BOSCH CORPORATION, et al Defendants. | |
| X | |

## SUPPLEMENTAL INFORMATION IN RESPONSE TO COURT'S JUNE 18, 2007 QUESTIONS RELATED TO CLAIMS IN AUSTRIA AND POTENTIAL BAR IF CLAIMS WERE FILED NOW IN AUSTRIA

I, Ivo Greiter, lawyer in Innsbruck, Austria, Europe hereby declare and say:

1) I am a lawyer in Innsbruck, Austria, Europe and have been involved with the claims of

   Kaprun victims and survivors from 2001 to the present.

2) I make this declaration in response to the Court's questions about Civil Action pending in Austria of June 18, 2007.

3) Ed Fagan informed me that the Court has asked these questions because it is presently considering Motions to Dismiss by American defendants in the *Blaimauer*, *Geier* and *Mitsumoto* cases which have alleged that Austria is a more convenient forum for the existing US claims and that the Kaprun victims and/or survivors can bring the same claims that they have in the United States in Austria. That is unfortunately not true.

4) There are multiple "bars" to the bringing of claims in Austria in 2007 by the Kaprun victims families whom I represent in Austria. They are as follows:

   a) There is a practical problem with the ability of the Austrian courts to enforce any judgment that could be attained in Austria against US-companies;

   b) There is a time bar to the bringing of any claim against the defendant companies that have been named in the complaints that have been pending or brought in the United States dating back to 2001. According to the information from Ed Fagan these defendants include:

      i) Omniglow Corporation and its alleged successor Cyalume;

      ii) American Cyanamid Corporation or its alleged successor Wyeth;

      iii) Robert Bosch Corporation;

      iv) Bosch Rexroth AG;

      v) Bosch Rexroth GmbH;

      vi) Rexroth Mannesmann AG;

      vii) Rexroth Mannesmann GmbH;

      viii) Mannesmann AG;

      ix) Mannesmann GmbH;

2

x)  Siemens AG;

xi) Siemens AG Austria;

xii) Siemens Transportation Systems Inc;

xiii)    Siemens Transportation Systems Gmbh;

xiv)    Siemens Transportation Systems Inc; and

xv) OB – Verbund.

5)  The Austrian legal system would bar these complaints because they do not have the same
principals which we have been told by Ed Fagan exist in the United States and which apply
to the existing US claims, as to which we rely on our present US counsel and previously
relied on former class counsel. According to the information from Ed Fagan these include:

a)  The statute of limitations tolling provisions which we understand to mean the clock stops,
applied while the former class action was in existence;

b)  Equitable tolling principals that we understand exist in the US to toll the statute of
limitations but which would not toll the Statute of Limitations in Austria;

c)  Equitable estoppel that we understand exist in the US to toll the statute of limitations but
which would not toll the Statute of Limitations in Austria;

d)  "Relation back" theory that we understand exist in the US to toll the statute of limitations
but which would not toll the Statute of Limitations in Austria; and

e)  Adding another cooperate party to an existing complaint is not possible and would not
toll the Statute of Limitations in Austria.

6)  The Court should note that the Kaprun victims' families that I represent commenced the
actions as I was informed by Ed Fagan in the United States in 2001.  I filed one claim in
Austria against GBK and that claim was based upon a very limited liability issue.  The only
reason I filed that complaint in Austria was to protect the Statute of Limitations against GBK

3

as to that claims as we awaited the US Court's decision on GBK's Motion to Dismiss for alleged lack of jurisdiction.

7) I did not file claims in Austria against any of the entities named in any of the Class Actions. Before I filed the claim in Austria against GBK I was informed as follows:

a) I was informed by US-counsel in 2002, the US Court had already denied the Motions to Transfer by Siemens AG, Siemens Austria, Siemens Corporation, Bosch Rexroth Corporation, Bosch Rexroth AG, Bosch Rexroth Hydraulics US and Omniglow Corporation in decisions dated August 5 and 14, 2002 respectively (*I have asked Ed Fagan to attach a copy of the Court's decision*).

b) I was informed by US-counsel that on October 13, 2003 – about 4 weeks before the expiration of the Statute of Limitations in Austria the US Court granted conditional class Certification (*I have asked Ed Fagan to attach a copy of the Court's decision*).

8) The Austrian civil court concerning the statute of limitation reads in its § 1489 as follows in German language:

"§ 1489. Jede Entschädigungsklage ist in drei Jahren von der Zeit an verjährt, zu welcher der Schade und die Person des Beschädigers dem Beschädigten bekannt wurde, der Schade mag durch Übertretung einer Vertragspflicht oder ohne Beziehung auf einen Vertrag verursacht worden sein. Ist dem Beschädigten der Schade oder die Person des Beschädigers nicht bekannt geworden oder ist der Schade aus einer oder mehreren gerichtlich strafbaren Handlungen, die nur vorsätzlich begangen werden können und mit mehr als einjähriger Freiheitsstrafe bedroht sind, entstanden, so erlischt das Klagerecht nur nach dreißig Jahren."

9) In English this § 1489 reads as follows (translated as in the book by Paul L. Baeck "The General Civil Code of Austria" published for The Parker School of Foreign and Comparative



4

Law Columbia University in the City of New York by Oceana Publications, Inc. Dobbs

Ferry, New York, 1972):

"Article 1489. All actions for damages are extinguished after three years as from the moment

when the damaged party learned of the damage and the identity of the person who caused it,

regardless whether the damage was caused by breach of contract or without relation to a

contract. If the damaged party does not become aware of the damages or of the identy of the

party who caused the damage, or if the damage arises from a felony, the right to sue is

extinguished after thirty years."

10) It seems that the defendants in the US have dragged these cases out for years. It now appears

that they did so just to get to this point where the could try to get the claims transferred to a

Court where – to coin a phrase - they would be *"Dead on Arrival"* either due to a time bar

or a jurisdictional bar.

11) The Kaprun victims families would be irreparably harmed and prejudiced if the defendants

Motion were granted. As noted above, these claims against the defendants listed under Point

4) b) from i) to xv) cannot be prosecuted in Austria because they are time barred in Austria.

The Kaprun victims families brought their claims in the United States and have prosecuted

them for the last 6 years and wish to finish them expeditiously in a Court where they can be

prosecuted and a court where a judgment can be enforced against the US-defendants.

12) I pray that the Court deny Defendants renewed Motion.

<u>**DECLARATION UNDER 28 USC § 1746**</u>

I declare, verify, certify and state under the penalty of perjury the foregoing
statements to be true.

Dated: 20 June 2007                             Ivo Greiter
Innsbruck, Austria

5

# EXHIBIT  8

*Court disregards 2ⁿᵈ question entirely*

```
--------------------------------------X
NANAE MITSUMOTO, et al.,              :
                                      :
                     Plaintiffs,      :
                                      :
       - against -                    :          07–CV–935 (SAS)
                                      :
ROBERT BOSCH                          :
CORPORATION, et al.,                  :
                                      :
                     Defendants.      :
--------------------------------------X
--------------------------------------X
JOOP H. STADMAN, et al.,              :
                                      :
                     Plaintiffs,      :
                                      :
       - against -                    :          07–CV–3881 (SAS)
                                      :
AUSTRIAN NATIONAL TOURIST             :
OFFICE INC., et al.,                  :
                                      :
                     Defendants.      :
--------------------------------------X
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

## ORDER



By email dated June 18, 2007, the Court posed a straightforward question to all parties, inquiring how many foreign plaintiffs currently have litigation arising out of the ski train disaster pending - against any defendant - in an Austrian court. By email dated that same day, plaintiffs' counsel fully answered that question. Nevertheless, plaintiffs' submissions of today's date reflect that plaintiffs' counsel misreads the Court's email as an invitation to file more declarations relating to the question of whether the Austrian courts provide an

2

adequate alternative forum, a consideration a court must address when deciding a motion to dismiss based on forum non conveniens. This issue was fully addressed in the parties' submissions and the Court issued its ruling. *See* Opinion & Order dated June 19, 2007. No further briefing was requested on this issue nor will such tardy submissions now be considered. Nevertheless, Local Rule 6.3 permits a party to timely move for reconsideration if it can assert an adequate ground for such a motion. If plaintiffs wish to exercise this option, they must do so in accordance with the applicable rules of procedure.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
         June 21, 2007

3

# EXHIBIT   9

77hbskic

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: SKI TRAIN FIRE
IN KAPRUN, AUSTRIA                    CASE NO.
                                      01 MDL 1428  (SAS)

------------------------------x
```



Before:            HON. SHIRA A. SCHEINDLIN

                              District Judge

                                          New York, N.Y.
                                          July 11, 2007
                                          1:03 p.m.

                          APPEARANCES

FOR PLAINTIFF:
    Edward Fagan, Esq.
    Christina Fry, Esq.

FOR DEFENDANTS:
    Paul P. Rooney, Esq.
    Sarah E. O'Connell, Esq.
    Aaril Soni, Esq.
    E. Gordon Haesloop, Esq.
    Brant W. Bishop, Esq.
    John Faust, Esq.
    Eileen T. McCabe, Esq.
    Warren Farris, Esq.
    Robert Littleton, Esq.
    Attorney O'Connell, Esq.

---

77hbskic                                                                    2

                (Case called)

            THE COURT:  Of course, Mr. Bishop is on the phone

    for --

            MR. BISHOP:  Siemens Transportation Systems.

            THE COURT:  All right.  I will follow the same format

    I usually follow with these conferences, stating for the record

    the long list of submissions I received, and then starting the

    agenda, and then, hopefully, handling that agenda.

            I issued an opinion and order on June 19th, 2007,

    dismissing the foreign plaintiffs' actions on the ground of

    forum non conveniens.

            No sooner was that opinion out the door, then the

    following submissions were made:

            On June 20th, a letter was received from Mr. Fagan

    saying that the opinion was premature and improvidently issued,

    and enclosing further declarations regarding the adequacy of

    Austria as alternative forum.

            Secondly on June 20, the same day, Mr. Bishop

    responded to Mr. Fagan's letter and asked that the Court

    prohibit any further submissions in light of its

    June 19th opinion.

            Number 3, on June 21, a letter from Mr. Fagan,

    inquiring whether the Court's June 19 opinion mooted

    plaintiff's motion for sanctions against Omniglo, Mr. Haesloop,

    his law firm, that is Mr. Haesloop's law firm, and Mr. Paul

77D0akic

1  any case. It shall be accompanied by a certificate of counsel
2  of record stating that it is made in good faith."
3  The Second Circuit has stated that the analysis as to
4  whether a judge has a personal bias or prejudice warranting
5  recusal, quote, looks to extra judicial conduct as the basis
6  for making such a determination. The substantive standard for
7  recusal is whether a reasonable person, knowing all of the
8  facts, would conclude that Court's impartiality might
9  reasonably be questioned.
10  And that quote is from Apple v. Jewish Hospital and
11  Medical Center, Second Circuit 1987.
12  There is a presumption of judicial impartiality and
13  the movant carries a heavy burden in attempting to overcome
14  this presumption for "a judge is as much obliged not to recuse
15  herself when it is not called for, as she is obliged to when it
16  is." And that is from In Re Drexel Burnham, Second Circuit
17  1988.
18  Thus, when presented with the recusal motion and
19  supporting affidavit, a judge "has an affirmative duty to
20  inquire into the legal sufficiency of such an affidavit and not
21  to disqualify herself unnecessarily." Which is from National
22  Auto Brokers v. General Motors, Second Circuit 1978.
23  Plaintiff's motion for recusal, pursuant to
24  Section 144, fails for two independent reasons:
First, it is untimely and, thus, procedurally

7

77D0akic

1  defective.
2  Second, it is entirely without merit.
3  I begin with the timeliness. As a threshold matter,
4  Section 144 requires an accusation of bias be submitted in a
5  timely manner, not after the Court has already ordered the case
6  to be dismissed. In the words the Second Circuit, a party must
7  move a recusal "at the earliest possible moment after obtaining
8  knowledge of facts demonstrating the basis for such a claim."
9  In order to ensure that the party is not "holding back
10  a recusal application as a fail-back position in the event of
11  adverse rulings on pending matters." That is LoCascio v.
12  United States, Second Circuit 2007.
13  This is precisely what plaintiffs are doing here.
14  According to plaintiffs' own submissions, this Court
15  consistently presided over their actions fairly and
16  impartially, up until this Court issued its ruling on
17  June 19th, dismissing plaintiffs' claims for forum non
18  conveniens.
19  But as the Supreme Court has instructed, such
20  substantive rulings are not the basis for finding bias. And I
21  quote at some length from the Supreme Court's decision in
22  Litkey v. United States in 1994: "Judicial rulings alone almost
23  never constitute a valid basis for a bias or partiality motion.
24  In and of themselves, that is apart from surrounding comments
25  or accompanying opinion they cannot possibly show reliance

8